UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY C. SMITH,                                    Case No. 14-10833

             Plaintiff,                    Patrick J. Duggan
v.                                                  United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                    Michael Hluchaniuk
                                                    United States Magistrate Judge

             Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 11)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On February 21, 2014, plaintiff Jeffrey C. Smith filed the instant suit

seeking judicial review of the Commissioner's unfavorable decision disallowing

benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), District Judge Patrick J. Duggan referred this matter to the undersigned

for the purpose of reviewing the Commissioner's decision denying plaintiff's

claim for disability insurance benefits.  (Dkt. 2).  This matter is before the Court

on cross-motions for summary judgment.  (Dkt. 9, 11).

### B.   Administrative Proceedings

Plaintiff filed the instant claim for disability and disability insurance

benefits (DIB) on July 7, 2011, alleging that he became disabled beginning

February 15, 2010.  (Dkt. 5-5, Pg ID 169-70).  The claim was initially disapproved

by the Commissioner on September 21, 2011.  (Dkt. 5-3, Pg ID 117).  Plaintiff

requested a hearing and on August 9, 2012, plaintiff appeared, with counsel,

before Administrative Law Judge (ALJ) Peter N. Dowd, who considered the case

de novo.  (Dkt. 5-2, Pg ID 53-94).  In a decision dated November 5, 2012, the ALJ

found that plaintiff was not disabled.  (Dkt. 5-2, Pg ID 33-47).  Plaintiff requested

a review of this decision, and the ALJ's decision became the final decision of the

Commissioner when the Appeals Council, on December 24, 2014, denied

plaintiff's request for review.  (Dkt. 5-2, Pg ID 20-23); *Wilson v. Comm'r of Soc.*

*Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's

motion for summary judgment be **GRANTED**, that the findings of the

Commissioner be **AFFIRMED**, and that sanctions be assessed against plaintiff's

counsel as set forth below.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff, born in 1970, was 39 years of age on the alleged disability onset

date, and 42 years old at the time of the hearing.  (Dkt. 5-2, Pg ID 46).  Plaintiff

had past relevant work experience as a restaurant cook, country club kitchen manager, teacher and restaurant sous chef. (Dkt. 5-2, Pg ID 45-46). The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since February 15, 2010, the alleged onset date. (Dkt. 5-2, Pg ID 38-39). At step two, the ALJ found that plaintiff's degenerative disc disease of the lumbar spine, panic disorder without agoraphobia, and depressive disorder were "severe" within the meaning of the second sequential step. (Dkt. 5-2, Pg ID 39-40). At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 5-2, Pg ID 40-42).

The ALJ determined that plaintiff had the following residual functional capacity ("RFC"):

> to perform a range of sedentary work activities as defined in 20 CFR 404.1567(a) except as restricted by the following: the claimant should have the occasional option to alternate between sitting and standing; the claimant should not climb ropes, ladders or scaffolding; the claimant is limited to occasional climbing of stairs/ramps, balancing and stooping, but should not kneel, crouch or crawl; the claimant should avoid exposure to hazards such as moving industrial machinery and unprotected heights; the claimant can mentally maximally tolerate superficial contact with supervisors and coworkers, but should not work with the general public.

(Dkt. 5-2, Pg ID 42-45). At step four, the ALJ found that plaintiff was unable to

3

perform his past relevant work, because the exertional demands of those positions exceeded plaintiff's RFC.  (Dkt. 5-2, Pg ID 45-46).  At step five, the ALJ denied plaintiff benefits because he could perform a significant number of jobs available in the national economy.  (Dkt. 5-2, Pg ID 46-47).

### B.    Plaintiff's Claims of Error

Plaintiff's brief begins with a recitation of the standards to be applied in evaluating the credibility of pain complaints.  Plaintiff then moves on to the Commissioner's obligation to prove that plaintiff was capable of other work, given that he could not perform his past relevant work.  Plaintiff contends that the Commissioner failed to satisfy this burden of proof because the hypothetical question posed to the vocational expert and on which the ALJ relied did not accurately describe plaintiff's limitations in all relevant respects. Plaintiff notes that the ALJ found him to have severe limitations of degenerative disc disease of the lumbar spine, panic disorder without agoraphobia, and depressive disorder, but that plaintiff's symptoms are not so severe as to prohibit him from performing all work activities.  (Tr. 20-21).  Plaintiff testified that he has flare ups of his back pain "a few days a week" and that on a typical day his pain is "between a five and a six."  (Tr. 64).  He also stated that he gets confined to bed around "three or four [times] in a month" and that "sometimes [he] might be stuck for a day or two [and] there have been other times where it's been as much as a week where [he would]

4

actually have to be taken to the hospital by EMT." (Tr. 65). He further testified that he can only stand for 20 minutes, sit for five minutes, and that he is unable to bend or squat as well. (Tr. 66).

Plaintiff argues that the medical records supports his testimony, citing a November 2010 record indicating plaintiff has "spinal degenerative disc disease" and with an impression of "displaced disc L4-L5" and "lumbar radiculopathy right L5." (Tr. 213-14). That record also notes that range of motion "is painful and decreased on forward flexion mostly not on extension or lateral flexion or rotational movements." (Tr. 214). Plaintiff further notes that a March 16, 2011 MRI gave the impression of "right lateral disc protrusion at L3-L4 along with focal spinal stenosis of a moderate degree," "large herniated disc, mostly central, with inferior migration to the dorsum of the L5 vertebral body at L4-L5. There are other degenerative changes, that is a diffuse bulging disc, facet osteoarthropathy and minimal hypertrophic ligamentum flavum. The presence of all these things along with the large disc herniation at this level, produces severe spinal stenosis," and "L5-S1 shows a moderate sized right paracentral disc protrusion with minimal indentation of the thecal sac." (Tr. 264). Plaintiff further notes that at an October 2010 examination, the doctor noted that plaintiff "is suffering from severe low back pain radiating down his right lower extremity" and that he has a positive raising leg test and "experiences severe low back pain when coughing, sneezing or

5

having bowel movements." (Tr. 285). Finally, plaintiff notes that at a February 2011 examination, the doctor noted an impression of "disc herniation of L5-S1 with disc protrusions of L3-4 and L4-5," "right sciatica," "right L5 sensory deficit," and "low back pain syndrome." (Tr. 315).

Plaintiff further asserts that the vocational expert testified, in response to the hypothetical questions posed by the ALJ, that he believed plaintiff could perform work as an office clerk, packager and inspector. (Tr. 28). Plaintiff argues, however, when the vocational expert was asked the effect of being off task, she testified that a person can be off task a "maximum of 20 percent of the time" before it becomes work preclusive. (Tr. 72). Additionally, plaintiff continues, when asked about absenteeism, the vocational expert stated that a person can only be absent "a maximum of one unexcused absence per month" before it becomes work preclusive. (Tr. 72). Plaintiff contends that the off task and absenteeism hypotheticals more adequately represent him and should have been followed. He argues that because the ALJ failed to provide and follow a hypothetical question that represented plaintiff in every aspect, the vocational expert's testimony should not constitute substantial evidence.

Next, plaintiff recites that standard applicable to the assessment of a treating physician opinion. After reciting these standards, plaintiff asserts that "[i]t is clear from the medical evidence of record and [plaintiff's] testimony that his ability to

engage in substantial gainful activity is severely limited as a result of his physical and mental conditions.  As such, [plaintiff] would only be capable of engaging in substantial gainful activity only by enduring great pain and should, therefore, be found disabled in accordance with the Social Security Rules and Regulations." (Dkt. 9, Pg ID 426).  Plaintiff therefore requests that this Court reverse the ALJ's decision and remand this case with an award of benefits, or, in the alternative, remand this case for further proceedings.

### C.     The Commissioner's Motion for Summary Judgment

The Commissioner argues that, although plaintiff's arguments are unclear, substantial evidence supports the ALJ's RFC determination and credibility finding.  According to the Commissioner, the ALJ here noted many inconsistencies between plaintiff's allegations and the record, including that: (1) clinical exam findings of full strength and generally normal gait seemed inconsistent with disabling back pain (Tr. 24, 214, 277, 285, 295, 297, 312); (2) plaintiff denied that physical therapy helped, but the therapist found objective signs of improved mobility and gait (Tr. 24, 282); (3) in April 2011, plaintiff reported no back pain (Tr. 24–25, 297); (4) In July 2011, plaintiff again reported no back pain "most of the time" (Tr. 25, 277); (5) despite claiming disabling pain, plaintiff refused back surgery in July 2011 (Tr. 25, 277); (6) plaintiff said his symptoms worsened in 2012, yet he was not referred to a specialist in 2012 (Tr.

25, 371); and (7) plaintiff sought only routine medication treatment in 2012

(Tr. 25, 371). The Commissioner contends that, taken together, these

inconsistencies are substantial evidence for the ALJ's finding that plaintiff was not

fully credible.

The Commissioner continues that the ALJ also properly evaluated the

medical opinion evidence.  As the ALJ noted, Dr. Karim's April 2011 opinion was

consistent with sedentary work. (Tr. 26, 354). Dr. Karim only said sitting and

standing would be "uncomfortable," *not* that plaintiff could not do it. (Tr. 354).

The Commissioner asserts that discomfort does not necessarily result in disability.

*See Williams-Overstreet v. Astrue*, 364 Fed. Appx. 271, 274 (7th Cir. 2010)

("Even claimants with substantial impairments are not necessarily entitled to

benefits, which are paid for by taxes, including taxes paid by those who work

despite serious physical or mental impairments and for whom working is difficult

and painful."). Moreover, the Commissioner continues, the ALJ noted that Dr.

Karim plainly said in his April 2011 treatment note that "[plaintiff] has no back

pain." (Tr. 26, 296). Thus, the Commissioner concludes, Dr. Karim's treatment

notes directly contradicted his opinion, and the ALJ properly accounted for the

opinion.

The Commissioner further asserts that Dr. John Vorhies, M.D., in a March

2012 state disability review Case Analysis, opined that plaintiff could do

8

sedentary work. (Tr. 339). The Commissioner asserts that while the ALJ did not

discuss this opinion, any omission was harmless because the opinion was fully

consistent with the ALJ's analysis and conclusion. *See Shinseki v. Sanders*, 556

U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally

falls upon the party attacking the agency's determination"). Indeed, the

Commissioner contends, this record evidence is more evidence that plaintiff was

not disabled, and thus remand for further consideration of this opinion would

change nothing.

The Commissioner argues that substantial evidence supports the RFC

limitation, asserting that after evaluating the medical opinions, treatment record,

clinical exams, and plaintiff's testimony, the ALJ made a function-by-function

analysis of plaintiff's RFC. (Tr. 25-26). Despite finding plaintiff less than fully

credible, the ALJ did find significant limitations. Specifically, he found plaintiff

could only sit for six hours in a workday, could walk only two hours each

workday, and needed an option to occasionally switch positions. (*Id*.). In short,

the Commissioner argues, the ALJ accepted that plaintiff's back pain limited him

to sedentary work, and that he occasionally needed to switch positions. (Tr. 25).

The Commissioner continues that, to accommodate reduced mobility and range of

motion, the ALJ limited plaintiff's postural movements and hazard exposure. (*Id*.).

As for mental limitations, the ALJ noted plaintiff preferred a solitary life, but still

9

ventured out among the public. (Tr. 25-26). To accommodate this, the ALJ restricted plaintiff to only superficial contact with supervisors and coworkers, and a job not with the public. (Tr. 23). The Commissioner concludes that the ALJ acknowledged plaintiff's allegations, adjusted his view of plaintiff's credibility after looking at the record, and assessed an RFC to account for the testimony and record evidence, and thus substantial evidence supports the RFC determination.

The Commissioner further argues that the ALJ proffered and relied on a proper hypothetical question to the vocational expert. Specifically, at the hearing, the ALJ asked a vocational expert if a person with plaintiff's age, education, experience, and RFC could do any jobs. (Tr. 23, 71). The vocational expert listed three jobs. (Tr. 71–72). Later in his decision the ALJ considered whether plaintiff could do jobs that existed in significant numbers. (Tr. 27–28). Relying on the vocational expert's testimony, the ALJ found a significant number of jobs existed that plaintiff could do, and thus he was not disabled. (Tr. 28). The Commissioner asserts that "[i]t is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). "A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets

forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001).  The Commissioner argues that here, the hypothetical question posed to the vocational expert matched the RFC.  (Tr. 23, 71). Because substantial evidence supports the RFC, substantial evidence supports the ALJ's step five finding. The Commissioner concludes therefore that this Court should find that the ALJ did not err in concluding that plaintiff was not disabled.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

**B.   Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

14

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

> Step Four:  If the claimant is able to perform his or her

> past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

16

decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### C.   Analysis and Conclusions

While the undersigned has thoroughly reviewed the record evidence, the parties' submissions, and the ALJ's decision, plaintiff cannot simply make the bald or skeletal claims that the ALJ erred, while leaving it to the Court to scour the record to support this claim.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to ... put flesh on its bones.") (citation omitted); *Crocker v. Comm'r of Soc. Sec.*, 2010 WL 882831 at *6 (W.D. Mich. Mar. 9, 2010) ("This court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments.") (citation omitted).  In the view of the undersigned, plaintiff's arguments are wholly insufficient and undeveloped.  Plaintiff offers no basis whatsoever for the Court to conclude that the ALJ's decision is not supported by substantial evidence and offers no factual or legal basis for the Court to conclude that the ALJ committed reversible error of any sort.  As explained

17

above, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.

Moreover, the Commissioner convincingly establishes that the ALJ's RFC determination and corresponding hypothetical question posed to the vocational expert are well-supported by substantial evidence, and that plaintiff's credible limitations were accommodated in the RFC.  The undersigned notes that the ALJ's finding that plaintiff was limited to a restricted range of sedentary level work is not inconsequential.  Under the Social Security regulations, "'sedentary work' represents a significantly restricted range of work.  Individuals who are limited to no more than sedentary work by the medical impairments have *very serious functional limitations*."  SSR 96-9p, 1996 WL 374185, at *3 (1996) (emphasis added).  While the medical evidence indicates that plaintiff does have severe impairments as noted by the ALJ, it does not specifically support plaintiff's testimony regarding the extent of his limitations.  Plaintiff simply fails to explain how the ALJ's RFC does not accommodate his credible limitations, as found by the ALJ, which are fully supported by substantial evidence in the record.  Plaintiff instead simply lists his diagnoses and his subjective complaints.  However, simply because plaintiff suffers from certain conditions or carries certain diagnoses does

not equate to disability or a particular RFC.  Rather, it is well settled that the mere

diagnosis of an impairment is not enough to show disability; a claimant must also

prove its severity and functional impact.  *Foster v. Bowen*, 853 F.2d 483, 489 (6th

Cir. 1988).  The residual functional capacity circumscribes "the claimant's

residual abilities or what the claimant can do, not what maladies a claimant suffers

from–though his maladies will certainly inform the ALJ's conclusion about the

claimant's abilities."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir.

2002).  "A claimant's severe impairment may or may not affect his or her

functional capacity to work.  One does not necessarily establish the other."  *Yang

v. Comm'r of Soc. Sec.*, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004).

"The regulations recognize that individuals who have the same severe impairment

may have different [residual functional capacities] depending on their other

impairments, pain, and other symptoms."  *Griffeth v. Comm'r of Soc. Sec.*, 217

Fed. Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e).  Thus, the mere

existence of any condition from which plaintiff may have suffered does not

necessarily establish any functional limitation or disability.

　　Here, plaintiff seemingly argues that merely because he suffers from certain

impairments, he must be disabled.  This is not so.  And, significantly, plaintiff has

failed to produce medical evidence or an opinion showing that he had greater

limitations than the ALJ found.  Specifically, plaintiff has not pointed to, and

indeed the record does not contain, an opinion supporting an off-task or absenteeism limitation as asserted by plaintiff. *See Maher v. Sec'y of Health & Human Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1987) (citing *Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987) ("lack of physical restrictions constitutes substantial evidence for a finding of non-disability.")). Accordingly, the Commissioner's decision is supported by substantial evidence.

Notably, plaintiff's counsel regularly presents briefs with woefully underdeveloped arguments. *See e.g., Fielder v. Comm'r of Soc. Sec.*, 2014 WL 1207865, at *1 n. 1 (E.D. Mich. Mar. 24, 2014) (Rosen, C.J.). In *Fielder*, Chief Judge Rosen suggested that sanctions, including a referral for disciplinary proceedings would be in order for future similarly deficient filings. Chief Judge Rosen's opinion was released on March 24, 2014. Plaintiff's brief in this case was filed on June 8, 2014, giving him more than adequate notice that he would be subject to sanctions if he continued to file such egregiously poor work product. In other recent cases, it has been recommended that monetary sanctions be assessed against plaintiff's counsel and/or that he be referred to the Attorney Grievance Commission, as he was so warned in *Fielder. See e.g., Swadling v. Comm'r of Soc. Sec.*, Case No. 14-10251 (E.D. Mich.) (Report and Recommendation, Dkt. 12); *Armstrong v. Comm'r of Soc. Sec.*, Case No. 13-14218 (E.D. Mich.) (Report

and Recommendation, Dkt. 13).[1]  As Magistrate Judge Mona Mazjoub observed in

*Swadling*, "Attorney Doud has been warned, and he has ignored those warnings."

The undersigned agrees with Judge Mazjoub that "Attorney Doud's conduct is

egregious and a wanton abuse of the judicial process tantamount to bad faith,

resulting in the gross misrepresentation of his client." *Id*.  A court may exercise its

inherent powers to impose sanctions "when a party has acted in bad faith,

vexatiously, wantonly, or for oppressive reasons . . . ." *Metz v. Unizan Bank*, 655

F.3d 485, 489 (6th Cir. 2011) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32,

45-46 (1991)).  Sanctions imposed under a court's inherent authority are punitive

in nature.  *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d

642, 647 (6th Cir. 2006).  "Accordingly, the sanction must be severe enough to

have some deterrent effect without being excessive and risking that the sanctioned

party would have an inability to satisfy the sanction's terms." *Dubuc v. Green*

*Oak Twp.*, 2010 WL 3245324, at *10 (E.D. Mich. Aug. 16, 2010), *aff'd*, 482 Fed.

Appx. 128 (6th Cir. 2012).  As in *Swadling*, the undersigned finds that a sanction

of $7,500.00 is appropriate.  And, as Chief Judge Rosen stated in *Fielder*, "failure

to adhere to [the appropriate] standards will result in . . . possible referral of

counsel for disciplinary proceedings."  The undersigned agrees with  Judge

---

[1] The Reports and Recommendations in *Swadling* and *Armstrong* remain pending before District Judge Terrence G. Berg and District Judge David M. Lawson, respectively, with no objections filed.

Mazjoub that such a referral is now appropriate.

## IV.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, that the findings of the Commissioner be **AFFIRMED**, and that sanctions be assessed against plaintiff's counsel as set forth above.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 23, 2015                    s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 23, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                           s/Tammy Hallwood
                                           Case Manager
                                           (810) 341-7887
                                           tammy_hallwood@mied.uscourts.gov